UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>JERRY DUNCAN FORD, INC.,<br>f/k/a JERRY DUNCAN FORD, LINCOLN, INC.,<br>f/k/a JERRY DUNCAN FORD, LINCOLN,<br>MERCURY, INC., MARTY R. DUNCAN,<br>KINGDOM KAPITAL LLC, SPIN CAPITAL LLC,<br>AMERICAN FUNDING SERVICES, INC.,<br>FIRST HORIZON CORPORATION, f/k/a<br>FIRST TENNESSEE BANK NATIONAL ASSOCIATION,<br>U.S. SMALL BUSINESS ADMINISTRATION,<br>"JOHN DOE" LENDER NO. 1, and<br>"JOHN DOE" LENDER NO. 2,<br><br>    Defendants. | **VERIFIED COMPLAINT**<br><br>Case No.: _____<br><br>**TRIAL BY JURY DEMANDED** |

Plaintiff Ford Motor Credit Company LLC ("Ford Credit"), by and through its attorneys, alleges as follows:

## NATURE OF THE ACTION

1. Ford Credit brings this action to, among other things: (1) enforce its rights as a secured creditor under a series of agreements with Defendant Jerry Duncan Ford, Inc. f/k/a Jerry Duncan Ford, Lincoln, Inc., f/k/a Jerry Duncan Ford, Lincoln, Mercury, Inc. (the "Dealership"), a motor-vehicle dealership that received financing from Ford Credit; (2) recover indebtedness the Dealership owes to Ford Credit; (3) enforce the continuing personal guaranty that Defendant Marty R. Duncan ("Mr. Duncan") made to Ford Credit; and (4) recover damages for the Dealership's conversion of Ford Credit's property.

2. The Dealership is in default on its obligations to Ford Credit, having breached its agreements with Ford Credit by, among other things, failing to remit to Ford Credit unpaid balances for vehicles sold, leased, or placed in use.

3. Ford Credit has demanded that the Dealership pay the balances due pursuant to its agreements with Ford Credit, but the Dealership has failed or refused to do so.

4. Ford Credit has also demanded that, pursuant to its agreements with Ford Credit, the Dealership surrender vehicles and other collateral to Ford Credit that are subject to Ford Credit's first-priority, properly-perfected security interest, but the Dealership has failed or refused to do so.

## THE PARTIES

5. Ford Credit is a limited liability company organized under the laws of the State of Delaware, and it is authorized to do business in Tennessee.

6. Ford Credit's sole member is Ford Holdings LLC, a limited liability company organized under the laws of the State of Delaware with a principal place of business located at One American Road, Dearborn, Michigan 48126.

7. Ford Holdings LLC is directly and wholly owned by Ford Motor Company, a Delaware corporation with a principal place of business located at One American Road, Dearborn, Michigan 48126.

8. Ford Credit's principal place of business is located at One American Road, Dearborn, Michigan 48126.

9. On or about April 20, 2007, Ford Motor Credit Company converted from a Delaware corporation to a Delaware limited liability company pursuant to Sections 228 and 266 of the Delaware General Corporation Law.

10. This conversion was effective on May 1, 2007, and, pursuant to the relevant statutes, Ford Motor Credit Company LLC is deemed the same entity as Ford Motor Credit Company by operation of law.

11. Accordingly, for jurisdictional purposes, Ford Credit is a citizen of Delaware and Michigan.

12. Upon information and belief, the Dealership is a corporation organized under Tennessee law and has a principal place of business located at 801 North Roane Street, Harriman, Tennessee.

13. Accordingly, for jurisdictional purposes, the Dealership is a citizen of Tennessee, and is subject to personal jurisdiction in Tennessee.

14. Mr. Duncan, a guarantor of the Dealership's indebtedness, is an individual domiciled at 216 Pat Road, Knoxville, Tennessee.

15. Accordingly, for jurisdictional purposes, Mr. Duncan is a citizen of Tennessee, and is subject to personal jurisdiction in Tennessee.

16. Upon information and belief, Kingdom Kapital LLC ("Kingdom") is a limited liability company organized under Connecticut law, with an address at 243 Tresser Boulevard, 17th Floor, Stamford, Connecticut.

17. Upon information and belief, the members of Kingdom are residents of the State of Connecticut.

18. Accordingly, for jurisdictional purposes, Kingdom is a citizen of Connecticut.

19. Upon information and belief, Spin Capital LLC ("Spin Capital") is a limited liability company organized under New Jersey law, with an address at 1274 49th, Brooklyn, New York.

20. Upon information and belief, Spin Capital is, accordingly, a citizen of New Jersey and New York for jurisdictional purposes.

21. Upon information and belief, American Funding Services, Inc. ("AFS") is a corporation organized under Florida law and has a principal place of business located at 200 Biscayne Boulevard, Apt. 3508, Miami, Florida.

22. Accordingly, for jurisdictional purposes, AFS is a citizen of Florida.

23. Upon information and belief, First Horizon Corporation, f/k/a First Tennessee Bank National Association ("FTB") is a corporation organized under Tennessee law and has a principal place of business located in Memphis, Tennessee.

24. Accordingly, FTB is a citizen of Tennessee.

25. Upon information and belief, the U.S. Small Business Association ("SBA") is an agency of the United States, with its headquarters located at 409 Third Street, S.W., Washington, D.C. and an office located at 2 North Street, Suite 320, Birmingham, Alabama.

26. Upon information and belief, CT Corporation System is an agent and representative of "John Doe" Lender No. 1, having filed a financing statement (Filing No.: 436072807) on behalf of "John Doe" Lender No. 1 with the Tennessee Secretary of State with respect to the Dealership on or around February 10, 2022.

27.     Upon information and belief, CT Corporation System is also an agent and representative of "John Doe" Lender No. 2, having filed a financing statement (Filing No.: 436832105) on behalf of "John Doe" Lender No. 2 with the Tennessee Secretary of State with respect to the Dealership on or around June 16, 2022.

28.     Upon information and belief, in its capacity as agent and representative of "John Doe" Lender No. 1 and "John Doe" Lender No. 2, CT Corporation System maintains an office located at 330 N. Brand Boulevard, Suite 700, Glendale, California.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a), as there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

30.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the events, transactions and omissions giving rise to the claims in this action occurred in Roane County, Tennessee and the property that Ford Credit seeks to recover is located within Roane County, Tennessee.

## THE AGREEMENTS BETWEEN FORD CREDIT, THE DEALERSHIP, AND MR. DUNCAN

### A. The Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement

31.     On or around August 1, 1984, the Dealership executed an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement"). A true copy of the Wholesale Agreement is attached as **Exhibit A**.

32. The Dealership executed the Wholesale Agreement to induce Ford Credit to provide the Dealership with financing, including a line of credit to be used to finance the Dealership's purchase of new and used motor vehicles (commonly known as floorplan financing). *See* Exhibit A, preamble.

33. Amounts advanced by Ford Credit under the Wholesale Agreement are called "Advances." *Id.* ¶ 1.

34. The Wholesale Agreement provides Ford Credit the sole right and discretion to:

> determine the extent to which, the terms and conditions on which, and the period for which it will make such advances, purchase such contracts or otherwise extend credit to [the Dealership] .... Ford Credit may, at any time and from time to time, in its sole discretion, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to [the Dealership].

*Id.* ¶ 1.

35. In exchange for the financing provided under the Wholesale Agreement, the Dealership agreed to "pay to Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto ...." *Id.* ¶ 3.

36. In exchange for the financing provided under the Wholesale Agreement, the Dealership also granted Ford Credit a security interest in various items of collateral, including motor vehicles, proceeds from the sale of those motor vehicles, and rebates or refunds owed to the Dealership. *Id.* ¶ 4.

37. Events of default under the Wholesale Agreement are defined to include the following:

(a) "[The Dealership] shall fail to promptly pay any amount now or hereafter owing to Ford Credit as and when the same shall become due and payable, or

(b) [The Dealership] shall fail to duly observe or perform any other obligation secured hereby, or

(c) Any representation made by [the Dealership] to Ford Credit shall prove to have been false or misleading in any material respect as of the date on which the same was made, or

(d) A proceeding in bankruptcy, insolvency or receivership shall be instituted by or against [the Dealership] or [the Dealership's] property."

*Id.* ¶ 9.

38. Upon default, Ford Credit is entitled to accelerate, and declare immediately due and payable, any or all of the Advances, plus accrued interest and flat charges, and to take immediate possession of all property in which it has a security interest. *Id.*

39. In the event Ford Credit is required to resort to legal process to enforce its rights under the Wholesale Agreement, the Dealership must "pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale of any such property." *Id.*

**B.  The Security Agreement**

40. On January 15, 2009, the Dealership executed a Security Agreement. A true copy of the Security Agreement is attached as **Exhibit B**.

41. Pursuant to the Security Agreement, the Dealership granted Ford Credit a security interest in:

(a) "All equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind.

(b) All motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto.

(c) All accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto."

Exhibit B.

42. The term "Collateral" will be used throughout the remainder of this Complaint to refer, collectively, to all property, accounts, papers, and rights in which the Dealership granted Ford Credit a security interest pursuant to the Wholesale Agreement and/or the Security Agreement.

C. **The Continuing Guaranty**

43. On May 13, 2015, Mr. Duncan executed a Continuing Guaranty (the "Continuing Guaranty"), a true copy of which is attached as **Exhibit C**.

44. The Continuing Guaranty was expressly made to induce Ford Credit "to make loans to and/or make advances" under the Wholesale Agreement, and "to purchase or otherwise acquire retail installment sale contracts, conditional sale contracts, chattel mortgages, or other security instruments or to otherwise extend credit to or do business with" the Dealership. *See* Exhibit C.

45. Pursuant to the Continuing Guaranty, Mr. Duncan "unconditionally" agreed:

(a) to guarantee that the Dealership "will fully, promptly, and faithfully perform, pay and discharge all [of the Dealership's] present and future obligations to [Ford Credit]";

(b) "to pay on demand all sums due and to become due to [Ford Credit] from [the Dealership] and all losses, costs, attorney's fees or expenses which [Ford Credit] may suffer by reason of [the Dealership's] default"; and

(c) "to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to [him]; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from [him]."

*Id.*

## THE COLLATERAL AND FORD CREDIT'S SECURITY INTEREST

46. The Collateral held and possessed by the Dealership includes, but is not limited to, new and used motor vehicles that remain in the Dealership's inventory, as listed in **Exhibit D**.

47. The Collateral also includes the Dealership's "equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind"; "motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto"; and "accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto." Exhibit B.

48. The value of the Dealership's motor vehicle inventory financed through Ford Credit is $3,044,425.61. *See* Exhibit D.

49. Upon information and belief the value of all other Collateral at the Dealership is approximately $878,000.

50. Throughout its history with the Dealership, Ford Credit has maintained a first-priority, perfected security interest in the Collateral by filing financing statements, continuations, and amendments with the Tennessee Secretary of State.

51. Ford Credit filed its first financing statement with respect to the Dealership on October 17, 1966, and filed timely amendments and continuations thereafter, which remain in full force and effect (and have been in full force and effect continuously since October 17, 1966). Attached as **Exhibit E** are true copies of Ford Credit's October 17, 1966 financing statement, and Ford Credit's subsequent amendments and continuations.

52. Upon information and belief, the Dealership appears to have other secured creditors, including Kingdom, Spin Capital, AFS, FTB, SBA, "John Doe" Lender No. 1, and "John Doe" Lender No. 2 (collectively, the "Subordinate Creditors").

53. At various times, it appears that the Subordinate Creditors may have filed financing statements with respect to the Dealership.

54. The Subordinate Creditors' financing statements post-date Ford Credit's first-priority financing statement filed in October 1966.

### THE DEALERSHIP'S DEFAULTS

55. Upon information and belief, on or around April 28, 2021, September 20, 2022, and October 24, 2022, the Dealership, or an affiliated entity, entered into certain "cash advance" agreements with third-party lenders.

56. In exchange for cash advances from such lenders, the Dealership pledged as security certain collateral that was, and is, already subject to Ford Credit's properly-perfected, first priority security interests.

57. Pledging such collateral constitutes a breach of the Wholesale Agreement.

58. On July 14, 2023, the Dealership and Ford Credit entered into a Forbearance Agreement, whereby Ford Credit agreed to forbear from exercising its rights

under its contracts with the Dealership including, but not limited to, demanding immediate payment of all amounts due and owing from the Dealership. A copy of the Forbearance Agreement is attached as **Exhibit F**.

59. In exchange for Ford Credit's forbearance, the Dealership agreed to pay Ford Credit "in full for all obligations due to Ford Credit" on or before September 30, 2023. *See* Exhibit F, ¶ 2.

60. The Dealership also agreed to, among other things, continue to abide by the terms of its agreements with Ford Credit, including the timely payments of amounts due and owing for the wholesale financing extended by Ford Credit. *See id.*, ¶ 8(a).

61. The Forbearance Agreement provides that, in the event of a breach by the Dealership, Ford Credit's remedies include: (1) terminating the Forbearance Agreement; (2) declaring all amounts owed by the Dealership immediately due and payable; and (3) taking possession of (and selling) Ford Credit's Collateral. *See id.*, ¶ 9.

62. The parties subsequently agreed, in writing, to extend the forbearance period through January 2, 2024.

63. On or around November 17, 2023, a Dealership electronic funds transfer ("EFT") of amounts owed to Ford Credit for the sale of financed vehicles was returned.

64. On November 21, 2023, another Dealership EFT of amounts owed to Ford Credit for the sale of financed vehicles was returned.

65. Together, the returned EFTs total $219,844.67.

66. On or around November 17, 2023, the Dealership also failed to pay $558,905.98 owed to Ford Credit from the sale of other financed vehicles.

- 11 -

Case 3:23-cv-00439-DCLC-DCP   Document 1   Filed 12/11/23   Page 11 of 17
PageID #: 11

67. The returned EFTs and the Dealership's failure to timely pay Ford Credit the proceeds from the sale of other financed vehicles constitutes a breach of the parties' agreements including, but not limited to, the Forbearance Agreement and the Wholesale Agreement.

68. Despite Ford Credit's demands, the Dealership and Mr. Duncan have neither satisfied their obligations to Ford Credit nor surrendered the Collateral for liquidation.

### FIRST CAUSE OF ACTION
### (For Writ of Possession)

69. Ford Credit realleges and incorporates by reference the allegations in Paragraphs 1 through 68.

70. The Collateral, including the new and used vehicle inventory listed in the attached Exhibit D, is subject to Ford Credit's first-priority, properly-perfected security interest.

71. Pursuant to the terms of the Wholesale Agreement, the Security Agreement—and under Tenn. Code. Ann. § 29-30-101 *et seq.*, applicable here pursuant to Federal Rule of Civil Procedure 64—Ford Credit is entitled to immediate possession of the Collateral.

72. Despite Ford Credit's demand that the Dealership surrender the Collateral, the Dealership continues to wrongfully hold and possess it.

73. The Collateral has not been taken for a tax, assessment, or fine, or seized under any execution or attachment against the Dealership's property.

74. The Collateral is in Roane County, Tennessee at the Dealership's principal place of business located at 801 North Roane Street, Harriman, Tennessee.

75. Upon information and belief, the estimated value of the Collateral that Ford Credit seeks to recover is $3,922,425.61.

76. The Subordinate Creditors are joined herein to answer for their interest, if any, in all or some of the Collateral.

77. Ford Credit is entitled to recover and liquidate the Collateral, and to apply the net proceeds obtained to the Dealership and Mr. Duncan's indebtedness to Ford Credit.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

78. Ford Credit realleges and incorporates by reference the allegations in Paragraphs 1 through 77.

79. Ford Credit is entitled to recover from the Dealership all amounts due and owing under the Wholesale Agreement, together with Ford Credit's attorneys' fees and other costs of collection.

80. The total amount immediately owed to Ford Credit pursuant to the Wholesale Agreement is approximately $3,082,962.10 (the "Indebtedness").

81. As set forth above, the Dealership breached its contract obligations to Ford Credit.

82. As a result, Ford Credit is entitled to recover the entire Indebtedness.

83. Accordingly, the Dealership is liable to Ford Credit for the Indebtedness, plus interest (which continues to accrue), as well as any additional expenses, costs, disbursements, and attorneys' fees Ford Credit has incurred, or will incur, in connection with its efforts to recover the Collateral, enforce the Wholesale Agreement, and collect the Indebtedness.

## THIRD CAUSE OF ACTION
### (Breach of the Continuing Guaranty)

84. Ford Credit realleges and incorporates by reference the allegations in Paragraphs 1 through 83.

85. Mr. Duncan executed the Continuing Guaranty, pursuant to which he jointly, severally, personally, and unconditionally guaranteed the performance by the Dealership of all duties and obligations due under the Wholesale Agreement.

86. Mr. Duncan has not paid the Indebtedness, and has thereby breached his obligations under the Continuing Guaranty.

87. Ford Credit is entitled to recover from Mr. Duncan, as damages, all amounts due from or incurred as a result of the Dealership's defaults, together with attorneys' fees and other costs of collection.

88. Accordingly, Mr. Duncan is liable to Ford Credit for the Indebtedness, plus interest (which continues to accrue), as well as any other expenses, costs, disbursements, and attorneys' fees Ford Credit has incurred or will incur, in connection with Ford Credit's efforts to recover the Collateral, enforce the Wholesale Agreement, and the Continuing Guaranty, and to collect the Indebtedness.

## FOURTH CAUSE OF ACTION
### (Conversion)

89. Ford Credit realleges and incorporates by reference the allegations in Paragraphs 1 through 88.

90. The Dealership has wrongfully appropriated and detained the Collateral and the proceeds of the Collateral by failing to surrender the Collateral or pay Ford Credit the amounts due and owing for the same.

91. Ford Credit never authorized the Dealership to use Ford Credit's Collateral, or the proceeds of the Collateral, without paying Ford Credit the amount of the credit extended with respect to the property sold.

92. Despite Ford Credit's demand that the Dealership surrender the Collateral, and proceeds from the collateral, the Dealership has refused to do so.

93. The Dealership has thereby unlawfully taken and asserted dominance over the Collateral and the proceeds of the Collateral.

94. The acts described above constitute an unlawful conversion of Ford Credit's property, resulting in damage to Ford Credit.

WHEREFORE, Ford Credit respectfully requests that, on its Cause of Action for a Writ of Possession, the Court:

(a) Enter final judgment granting Ford Credit possession of the Collateral;

(b) Award Ford Credit all attorneys' fees and costs of collection incurred to enforce its right to possession of the Collateral; and

(c) Award Ford Credit other further interim and final relief, including money damages, deterioration damages, and costs, as justice and equity require.

Ford Credit also respectfully requests that on its Breach of Contract and Breach of Continuing Guaranty Causes of Action, the Court enter judgment in its favor against the Dealership and Mr. Duncan in the amount of $3,082,962.10, together with costs, interest, attorneys' fees, and such other and further relief as this Court deems proper

Finally, Ford Credit respectfully requests that, on its Conversion Cause of Action, the Court enter judgment in its favor against the Dealership in the amount of

$3,082,962.10, together with punitive damages, additional costs, interest, attorneys' fees, and such other and further relief as this Court deems proper.

## JURY DEMAND

95. Ford Credit demands a trial by jury on all issues so triable.

DATED: December 11, 2023

          **LIPSEY, MORRISON,**
          **WALLER & LIPSEY, P.C.**

          By /s/ Steven D. Lipsey
             Steven D. Lipsey, Esq.
          TN BPR #007226
          1430 Island Home Avenue
          Knoxville, Tennessee 37920
          (865) 546-6321
          (865) 546-0422 (Fax)
          slipsey@lmwl.law

          *Attorneys for Plaintiff*
          *Ford Motor Credit Company LLC*

## VERIFICATION

STATE OF TENNESSEE )
                                 ) SS:
COUNTY OF WILLIAMSON )

T. Christopher Parish, being duly sworn, deposes and says that he is an Operations Manager for Ford Motor Credit Company LLC, the Plaintiff in this action; that he has read the forgoing Verified Complaint and knows the contents thereof; that the same is true to his knowledge, except as to the matters therein alleged on information and belief, and that as to those matters he believes it to be true.

_____
T. Christopher Parish

Sworn to before me this
__8__ day of December, 2023.

_____
Notary Public

